IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RADAMES LOPEZ, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. 4:CV-07-1126 |
| | : | |
| DR. JAMES BRADY, ET AL., | : | |
| | : | (Judge McClure) |
| Defendants | : | |

## MEMORANDUM

June 3, 2008

## Background

Radames Lopez ("Plaintiff"), an inmate presently confined at the Northeast Ohio Correctional Center, Youngstown, Ohio, initiated this *pro se* combined civil rights/Federal Tort Claims Act ("FTCA") action. Lopez's Complaint regards actions which purportedly transpired during his prior confinements at the Allenwood Low Security Correctional Institution, White Deer, Pennsylvania ("LSCI-Allenwood") and the Allenwood Federal Correctional Institution, White Deer, Pennsylvania ("FCI-Allenwood"). Service of the Complaint was previously

1

ordered.

Named as Defendants are the United States Public Health Service; the Federal Bureau of Prisons ("BOP"); William Banks, M.D.; and the following BOP employees, Clinical Directors Doctor James Brady and Doctor Olatokunbo Ojundaye; Physicians Assistants Leonard Weber, Joseph Freynik, Charles Craig, Ralph Roces, and Robert Manenkoff; Connie Woodhead;  Disciplinary Hearing Officer ("DHO") Todd Cerney; Paramedic Gregory George; Correctional Officers Free and Kevin.  Lopez also indicates that he is proceeding against numerous John Doe Defendants.

Plaintiff states that he suffered facial injuries on September 18, 2004 while playing basketball in the FCI-Allenwood recreation yard.  His injuries resulted when Lopez "collided with the steel pole" supporting the basket and fell to the ground.   Record document no. 1, ¶ 18.  The Complaint describes the mishap as being "preventable" because the pole was not "protected by any padding."[1]  *Id.*

Following the incident, Plaintiff although bleeding from a laceration near his left eye, purportedly remained on the basketball court accompanied by Correctional Officer Kevin without medical attention being summoned for

_____

[1] Lopez notes that the basketball support poles at LSCI-Allenwood are padded.

approximately one (1) hour while Correctional Officer Free verified Lopez's version of the underlying events.  Plaintiff was eventually instructed by Free to walk unescorted to the FCI-Allenwood Medical Department for treatment. His Complaint contends that the conduct of Defendants Kevin and Free constituted deliberate indifference to his injuries.

Upon his arrival at the Medical Department, a laceration near Plaintiff's left eye was treated by Physician's Assistant ("PA")  Freynik.  However, it is alleged that Freynik failed to have Lopez transported to an outside hospital for an assessment of the obvious serious injury to his right eye.  *See id.* at ¶ 24.  Plaintiff acknowledges that three (3) days later, x-rays were taken of his right eye injury by the Medical Department.  According to the Complaint, a radiologist, Doctor Gould-Earley, reviewed those x-rays that same day and recommended via a fax to Doctor Ojundaye that Lopez undergo a CT-scan.  However, Ojundaye purportedly did not review this recommendation until the following day and although he approved the request, the Defendant allegedly failed to indicate the urgent need for the CT-scan.

Twelve (12) days later, on September 30, 2004, Plaintiff underwent a CT-scan at an outside facility.  The resulting report from that test, which

3

recommended that Lopez have an immediate consultation with an Ear, Nose, and

Throat specialist ("ENT"),  was allegedly faxed to Doctor Ojundaye that same

day.  However, it is similarly asserted that Okundaye did not review the report

until the next day.  Plaintiff adds that he was not seen by Doctor Banks, an ENT

specialist, until October 7, 2004 (three (3) weeks after sustaining the eye injury).

It is next alleged that although Dr. Banks recommended that Lopez undergo

surgery at the earliest possible date, that Defendant was allegedly negligent for not

performing immediate surgery.  *See id.* at ¶ 30.  Plaintiff admits that he underwent

surgery on October 14, 2004.  However, due to the delay in undergoing surgery,

Lopez concludes that he may have suffered continued pain and loss of vision and

may require additional surgeries with limited chance of success.  It is also asserted

that Doctor Banks delayed surgery due to BOP budgetary concerns.  *See id*.

Following surgery, Plaintiff states that he was prescribed Tylenol for pain,

however, he claims to have suffered side effects from that medication, including

rapid heart beat, which were "never addressed" by Defendants.  *Id*. at ¶ 31.

On October 25, 2004, Lopez had a post-surgical examination with Doctor

Banks.  Banks allegedly informed Plaintiff that "everything was healing normally"

and another follow up appointment would be scheduled within eight (8) weeks

from the date of surgery.  *Id*. at ¶ ¶ 32 & 35.  According to the Complaint, Banks was allegedly pressured by Doctor Ojundaye into subsequently agreeing that another follow up appointment was not necessary.

The remainder of the Complaint sets forth additional allegations of medical deliberate indifference as well as other claims of negligence and constitutional misconduct which subsequently transpired at both FCI-Allenwood and LSCI-Allenwood (on August 24, 2005 Plaintiff was transferred to LSCI-Allenwood). There is no indication that Doctor Banks was involved in the conduct underlying those additional claims.

Presently pending is Defendant Banks' motion to dismiss the Complaint. *See* Record document no. 11.  The motion has been fully briefed and is ripe for disposition.

**<u>Discussion</u>**

Defendant Banks claims entitlement to entry of dismissal on the grounds that: (1) Plaintiff's claims under § 1983, 1985 & 1986 are barred by the statute of limitations; (2) a viable § 1985 claim has not been set forth; and (3) Plaintiff's state claim of medical malpractice is barred because he failed to file the required certificate of merit.

**A.      Standard of Review**

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the plaintiff's allegations.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *White v. Napoleon*, 897 F.2d 103, 106 (3d Cir. 1990).  In *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  "[W]hen a complaint adequately states a claim, it may not be dismissed on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  *Bell Atlantic v. Twombly*, 127 S.Ct. 1955. 1969 (2007).

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief.*"  Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted).  Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990); *Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1168 (3d Cir. 1997).  Finally, it is additionally well-settled that *pro se* complaints should be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**B.** **Statute of Limitations**

In reviewing the applicability of the statute of limitations to a civil rights

action, a federal court must apply the appropriate state statute of limitations which

governs personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985);

*Urrutia v. Harrisburg County Police Dep't*, 91 F.3d 451, 457 n.9, 25 (3d Cir.

1996). The United States Supreme Court clarified its decision in *Wilson* when it

held that courts considering federal civil rights claims "should borrow the general

or residual [state] statute for personal injury actions." *Owens v. Okure*, 488 U.S.

235, 250 (1989); *Little v. Lycoming County*, 912 F.Supp. 809, 814 (M.D. Pa.

1996). Pennsylvania's applicable personal injury statute of limitations is two (2)

years. *See* 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); *Kost v.

Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993); *Smith v. City of Pittsburgh*, 764 F.2d

188, 194 (3d Cir.), *cert. denied*, 474 U.S. 950 (1985).

A claim under 42 U.S.C. § 1986 must be brought within one (1) year. §

1986 has an "explicit limitations period of but "one year after the cause of action

has accrued.'" *Vitale v. Nuzzo*, 674 F. Supp 402, 405 (D. Conn. 1986). It has been

recognized by the Third Circuit Court of Appeals that the statute of limitations for

§ 1985 claims is also two (2) years. *See  Bougher v. University of Pittsburgh*, 882

F.2d 74, 79 (3d Cir. 1989).   Finally, Lopez's state law claim of medical

malpractice also has a two (2) year statute of limitations. *See Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991).

It is well settled that the issue of when a cause of action accrues is a question of federal law. *Smith v. Wambaugh*, 887 F. Supp. 752, 755 (M.D. Pa. 1995). The Third Circuit Court of Appeals has established that the statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action." *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted). Thus, Lopez's civil rights claims against Doctor Banks accrued when the facts which support those claims reasonably should have become known. However, if a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing pattern falls within the limitations period. *Brenner v. Local 514*, 927 F. 2d 1283, 1295 (3d Cir. 1991).

In his opposing brief to Doctor Banks' motion to dismiss, Plaintiff generally argues that dismissal on the basis of untimeliness is not appropriate because he "is still undergoing treatment and continues to suffer from negligent treatment." Record document no. 27, p. 2. The Court will construe Lopez's opposing brief as including an argument that his case falls within the continuing pattern exception.

Plaintiff's complaint is dated June 19, 2007. Under the standards announced in *Houston v. Lack*, 487 U.S. 266 (1988), the Complaint will be

deemed filed as of that date.  Based upon a review of the Complaint, Plaintiff was

initially seen by Doctor Banks on October 7, 2004.  Surgery was performed on

October 14, 2004.  Banks conducted a post surgical examination on October 25,

2004.  There is no indication that the moving Defendant had any involvement in

Plaintiff's care after that date.

Lopez clearly acknowledges that Doctor Banks had limited involvement in

his care.  There is also no indication from the Complaint that Doctor Banks played

any role in Plaintiff's care once it was determined that said Defendant would not

be performing a second, post-surgical follow up appointment within eight (8)

weeks following his surgery.  Based upon those factors, it is apparent to this Court

that the continuing pattern exception is not applicable in the present case.   This

Court agrees that Defendant Banks' conduct with respect to the Plaintiff's claims

initiated on October 7, 2004 when he initially examined the prisoner and

continued until December 14, 2004 when Doctor Banks failed to conduct a second

post-operative examination within eight (8) weeks following Plaintiff's surgery.

Consequently, it is apparent that the last conduct within the continuing pattern

which may be attributed against Doctor Banks did not fall within the applicable

two (2) year limitations period prior to the June 19, 2007 filing of this action.

*Brenner*, 927 F. 2d at 1295.

Lopez's opposing brief also indicates that the statute of limitations should

not begin to run until his recovery and rehabilitation are complete.  The gist of

Plaintiff's claims against Doctor Banks are twofold, first it is alleged that Banks

acted improperly by not scheduling Lopez for immediate surgery and second that

Banks was deficient for not conducting a second post surgical follow up

examination within eight (8) weeks following his surgery.  *See* Record document

no. 1, ¶ 35.

It is well-settled that a person may realize he has been injured but is not

adequately apprised as to the cause of his injury.  *See McGowan v. University of

Scranton*, 759 F.2d 287 (3d Cir. 1985).  The Court of Appeals for the Third

Circuit's decision in *Oshiver v. Levin, Fishbein, Sedran, & Berman*, 38 F.3d 1380

(3d Cir. 1993) recognized two doctrines, equitable tolling and the discovery rule,

which may extend the statute of limitations.  The statute of limitations may be

subject to equitable tolling where it is shown that the plaintiff exercised reasonable

diligence in bringing his claims.  *Campbell v. Kelly*, 87 Fed. Appx. 234, 236 (3d

Cir. 2003).   The discovery rule is a judicially created principle which tolls the

statue of limitations in cases where a reasonable person in the plaintiff's shoes

lacks the critical facts to put him on notice that he needs to investigate.

It has been recognized that the limitations period in a § 1983 action will

begin to run even if the plaintiff does not know all the facts necessary for his

claim.  All that is required is that the plaintiff have sufficient notice to place him

on alert of the need to begin investigating. *Gordon v. Lowell*, 95 F. Supp.2d 264, 272 (E.D. Pa. 2000). Under *Gordon,* a "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." *Id*.

Lopez's unsupported argument that the statute of limitations does not begin to run until he makes a complete recovery lacks merit. On the contrary, the statute began to run when Plaintiff was apprised of the critical facts needed to put him on notice of the need to investigate.

Plaintiff was aware that Doctor Banks would not be performing immediate surgery in October 2004. As of December 14, 2004, the eight (8) week anniversary of his surgery, Lopez had sufficient knowledge that a second post surgical examination would not be provided within two (2) months following surgery as purportedly promised by Doctor Banks. This Court is satisfied that based upon an application of the standards announced in *Gordon* and *Campbell* to the fact**s** set forth in the Complaint**,** it can be concluded that by December 14, 2004, Plaintiff was provided with the critical facts needed to put him on notice to begin investigating his deliberate indifference claims against Doctor Banks.

Lopez did not file his present action until June 19, 2007, in excess of two (2) years after it was apparent that he would not be having a second post-surgical follow up appointment with Doctor Banks and thereby put on notice of the critical facts necessary to support his present claims relating to deliberate indifference,

medical malpractice, and § 1985.  Accordingly, those contentions against Doctor

Banks are barred by Pennsylvania's applicable two (2) year statute of limitations.

In addition, the one (1) year statute of limitations for § 1986 claims bars Lopez's

claims against Banks under that statute.  Furthermore, Plaintiff has not established

any basis for equitable tolling of the limitations period or that his claim should be

deemed timely under the continuing pattern exception.

**C.    § 1985 Claim**

Plaintiff's Complaint indicates that Doctor Banks "succumbed" to the

BOP's "budgetary attempts to save money by delaying the surgery."  Record

document no. 1, ¶ 30.  It is also asserted that due to pressure from Doctor

Ojundaye, Banks withdrew his recommendation that Plaintiff should undergo a

second post-surgical examination.  *See id.* at ¶ 34.  Doctor Banks contends that

Plaintiff's allegations to the extent that seek relief under 42 U.S.C. § 1985 fails to

state a claim upon which relief may be granted because there are no allegations of

racial or class based discrimination.

Five elements must be alleged to state a § 1985 claim: (1) a conspiracy by

the defendants, (2) designed to deprive a plaintiff of the equal protections of the

laws, (3) the commission of an overt act in furtherance of that conspiracy, (4) a

resultant injury to person or property or a deprivation of any right or privilege of

citizens, and (5) defendant's actions were motivated by racial or otherwise class-

based invidiously discriminatory animus. *United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 830 (1983).

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1377 (3d Cir. 1992), *cert. denied*, 506 U.S. 1079 (1993); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989); *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989).  The Court of Appeals for the Third Circuit has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." *Rose*, 871 F.2d at 366.  Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. *See D.R. by L.R.*, 972 F.2d at 1377; *Durre*, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. *Id.*; *Rose*, 871 F.2d at 366; *Young v. Kann*, 926 F.2d 1396 1405 n.16; *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539

13

(E.D. Pa. 1982).  Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and unsupported speculation.  *Young*, 926 F.2d at 1405 n.16 (3d Cir. 1991).

The fifth prong of *United Brotherhood* by itself is dispositive of Plaintiff's present § 1985 conspiracy claim as none of his allegations suggests that Defendant Banks' alleged actions were motivated by a racial or otherwise class-based invidiously discriminatory animus.  Furthermore, Plaintiff's bald speculative assertions of conspiracy do not satisfy the pleading requirements of *Rose, Deck*, and *Young*.  Specifically, there are no averments of fact in the Complaint that reasonably suggest the presence of an agreement or concerted activity between Doctor Banks and any federal correctional officials to delay or deny Lopez needed medical treatment or to otherwise violate his civil rights.  Accordingly, the motion to dismiss will be granted with respect to Lopez's speculative allegations of conspiracy.[2]

---

[2]    42 U.S.C. § 1986 imposes liability on an individual who has knowledge that a violation of § 1985 is about to be committed and has the power to prevent commission of the same but fails to do so.  A plaintiff cannot set forth a viable claim under § 1986 without first establishing an actionable conspiracy under § 1985.  *Baines v. Masiello*, 288 F. Supp.2d 376, 394-95 (W.D.N.Y.  2003); *Lowden v. William M. Mercer Inc.*, 903 F. Supp. 212, 218 (D.Mass. 1995).  Based on this Court's determination that Plaintiff has failed to state a viable claim under § 1985, Lopez's

(continued...)

### D.     Certificate of Merit

Pennsylvania Rule of Civil Procedure 1042.3 requires that in an action "based upon an allegation that a licensed professional deviated from an acceptable professional standard" the plaintiff is required to file a Certificate of Merit.  In cases where jurisdiction is premised upon diversity of citizenship, federal district courts must apply state substantive law.

Based upon a review of the Complaint and the liberal standards applied to *pro se* filings, Plaintiff is asserting a pendent state law claim of medical malpractice against Doctor Banks.

Courts within this circuit have recognized that Rule 1042.3 is substantive law and should be applied by federal courts sitting in diversity.  *Schwalm v. Allstate Boliler & Construction*, 2005 WL 1322740 *1 (M.D. Pa. May 17, 2005)(Caputo, J.); *Scaramuzza v. Sciolla*, 345 F. Supp.2d 508, 509-10 (E.D. Pa. 2004).  This court agrees that Rule 1042.3 is substantive law.  Thus, the sole issue is whether application of the Rule is required in the present case.  *See also Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000)(recognizing that New Jersey statute requiring the filing of an affidavit of merit in professional malpractice cases was substantive state law).

---

[2](...continued)
attempt to assert claims against Defendant Banks pursuant to § 1986 must likewise fail.  *See Kessler v. Monsur*, 865 F. Supp. 234, 239 (M.D. Pa.  1994).

In *Cortlessa v. County of Chester*, 2005 WL 2789178 *10, n. 7 (E. D. Pa. Oct. 26, 2005), the Eastern District of Pennsylvania addressed a similar situation. *Cortlessa* was an action filed pursuant to § 1983 which included supplemental state law negligence claims.  The Eastern District observed in a footnote that the Rule 1042.3 Certificate of Merit filing requirement was not applicable because the court was not sitting in diversity and thus, there was no authority "to dismiss a claim supplemental to a § 1983 claim." *Id*.  However, in a contrary Eastern District ruling, *Abdulhay v. Bethlehem Medical Arts*, 2005 WL 2416012 * 3 (E.D. Pa. Sept. 28, 2005), the district court held that Rule 1042.3 was substantive law and that under *Erie Railroad v. Tompkins*, 304 U.S. 64, (1938), federal courts must apply it to state law claims arising under pendent jurisdiction.  The Court added that Rule 1042.3 needed to be applied to ensure that "the outcome of the litigation in federal court will be substantially the same as it would be if tried in a state court." *Id*. at *4.

In *Chamberlain*, the Court of Appeals for the Third Circuit similarly stressed that federal courts should apply state substantive law in order that the federal court litigation will be substantially the same as if the action had been brought in state court.  More recently, in *Lee v. Thompson*, 163 Fed. Appx. 142 (3d Cir. 2006), the Third Circuit Court of Appeals affirmed the district court's dismissal of an action on the basis that a *pro se* plaintiff had failed to comply with

New Jersey's affidavit of merit requirement.  The Court generally determined the failure to timely file the affidavit was an appropriate basis for dismissal of the action for failure to state a cause of action.  This Court agrees with the reasoning set forth in *Chamberlain, Lee,* and *Abdulhay*, and likewise finds that Rule 1042.3 should be applied to the present pendent state law negligence claim against Doctor Banks.

Finally, there is the issue of whether a defendant who asserts a failure to file a Rule 1042.3 certificate must establish prejudice.  The Eastern District in *Scaramuzza* indicated that the defendants must show that they have been prejudiced by a plaintiff's failure to comply with Rule 1042.3.  *See Scaramuzza*, 345 F. Supp.2d at 511.  However, in *Hartman v. LSCI-Allenwood*, 2005 WL 1259950 *4 (M.D. Pa. May 27, 2005), Judge Caputo of this Court, in an action brought under the court's diversity jurisdiction, parted from *Scaramuzza* stating that "prejudice was immaterial when considering whether a plaintiff's claims should be dismissed for failure to comply with Rule 1042.3."  It also noted that the Third Circuit Court of Appeals' recent decision in *Lee* contained no finding that a defendant who was seeking summary judgment for a plaintiff's failure to file an affidavit of merit as required under New Jersey state law was required to establish prejudice.

This Court agrees with *Hartman* and likewise concludes that a defendant

17

who argues non-compliance by a plaintiff with Rule 1042.3 need not establish prejudice.  This determination is bolstered by the non-prejudice analysis undertaken in *Lee*.   Since Plaintiff has not submitted a Rule 1042.3 Certificate of Merit, Doctor Banks is entitled to dismissal of the state law claims of medical malpractice.

Pursuant to the above discussion, Doctor Banks' motion to dismiss will be granted.  An appropriate Order will enter.


    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge




IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RADHAMES LOPEZ,                    :
        Plaintiff              :
                             :
      v.                         :    CIVIL NO.4:CV-07-1126
                             :
                             :    (Judge McClure)
DR. JAMES BRADY, ET AL.,           :
        Defendants             :

## ORDER

June 3, 2008

In accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

> 1.    Defendant William Banks, M.D.'s motion to dismiss (Record document no. 11) is GRANTED.
>
> 2.    The Clerk of Court is directed to terminate Doctor Banks as a Defendant in this matter.
>
> 3.    Judgment in favor of Defendant Banks will be entered upon final disposition of this action.

          s/ James F. McClure, Jr.
          James F. McClure, Jr.
          United States District Judge