IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RADAMES LOPEZ,                          :
                                        :
            Plaintiff                   :
                                        :
     v.                                 :        CIVIL NO. 4:CV-07-1126
                                        :
DR. JAMES BRADY, ET AL.,                :
                                        :        (Judge McClure)
            Defendants                  :

## MEMORANDUM

September 25, 2008

## Background

This combined *pro se Bivens*[1]-type civil rights/Federal Tort Claims Act

("FTCA") action was filed by Radames Lopez ("Plaintiff"), an inmate presently

confined at the Northeast Ohio Correctional Center, Youngstown, Ohio.[2]  By

Memorandum and Order dated June 3, 2008, Defendant William Banks, M.D.'s

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* allows a person to recover monetary damages against a responsible federal official who is responsible for injury to a constitutionally protected interest.

[2] The FTCA provides a remedy in damages for the simple negligence of employees of the United States to protect federal inmates. *United States v. Muniz*, 374 U.S. 150, 150 (1963).

1

motion to dismiss was granted.  Presently pending is a motion to dismiss and for summary judgment filed by Remaining Defendants.  *See* Record document no. 31. The motion is ripe for consideration.

Lopez's Complaint regards actions which purportedly transpired during his prior confinements at both the Allenwood Low Security Correctional Institution, White Deer, Pennsylvania ("LSCI-Allenwood") and the Allenwood Federal Correctional Institution, White Deer, Pennsylvania ("FCI-Allenwood"). Remaining Defendants are the United States Public Health Service; the Federal Bureau of Prisons ("BOP"); and the following BOP employees, Clinical Directors Doctor James Brady and Doctor Olatokunbo Okundaye; Physicians Assistants Leonard Weber, Joseph Freynik, Charles Craig, Ralph Roces, and Robert Manenkoff; Connie Woodhead;  Disciplinary Hearing Officer ("DHO") Todd Cerney; Paramedic Gregory George; Correctional Officers Free and Kevin.  Lopez also indicates that he is proceeding against numerous John Doe Defendants.[3]

According to the Complaint, Lopez suffered facial injuries on September 18, 2004 while playing basketball in the FCI-Allenwood recreation yard. Specifically, Plaintiff was allegedly injured when he "collided with the steel pole"

---

[3]  No John Doe defendants have been identified and the Complaint does not assert claims against any John Doe defendants.

supporting the basket and fell to the ground.   Record document no. 1, ¶ 18.

Plaintiff initially claims that his injuries were  "preventable" because the pole was

not "protected by any padding."[4]  *Id.*  He filed an administrative tort claim with

the BOP which in part claimed that the lack of padding constituted negligence.

His administrative tort claim was denied on March 9, 2007.

Although bleeding from a laceration near his left eye, Lopez asserts that he

was required to remain on the basketball court without medical attention being

summoned for approximately one (1) hour.  During this period,  Plaintiff was

watched by Correctional Officer Kevin while Correctional Officer Free went to

the recreation office to view security videotape in an effort to verify Lopez's

version of the underlying events.  Officer Free eventually returned and directed

Plaintiff to walk unescorted to the FCI-Allenwood Medical Department for

treatment.  His Complaint contends that the failure of Defendants Kevin and Free

to immediately summon medical assistance or administer first aid constituted

deliberate indifference to his injuries.  *See id.* at ¶ 22.

Upon his arrival at the Medical Department, the laceration near Plaintiff's

left eye was treated by Physician's Assistant ("PA")  Freynik.  However, PA

---

[4]  Lopez notes that basketball support poles at LSCI-Allenwood are padded.

3

Freynik purportedly acted improperly by neglecting to have Lopez transported to an outside hospital for an assessment of an obvious, more serious injury to the prisoner's right eye. *See id.* at ¶ 24.  Three (3) days later, on September 21, 2004, x-rays were taken of his right eye injury by the Medical Department.  According to the Complaint, a radiologist, Doctor Gould-Earley, reviewed those x-rays that same day and recommended via a fax to Doctor Okundaye that Lopez undergo a CT-scan.  However, Doctor Okundaye purportedly did not review this recommendation until the following day.

Plaintiff acknowledges that after reviewing Doctor Gould-Earley's report, Doctor Okundaye faxed a request for a CT-scan to Tristan Associates, which is described as being an outside medical contractor for the BOP.  However, this request allegedly did not indicate an urgent need for testing.  *See id.* at ¶ 26. On September 30, 2004, Plaintiff underwent a CT-scan at an outside facility operated by Tristan.  Results from that test were reviewed by a Doctor Jozefiak who prepared a written recommendation that Lopez have an immediate consultation with an Ear, Nose, and Throat specialist ("ENT").  Doctor Jozefiak's report was allegedly faxed to Doctor Okundaye that same day.   Once again, it is asserted that Doctor Okundaye allegedly did not review the report until the next

4

day.  The Complaint acknowledges that a consultation was arranged with an ENT, Doctor Banks.  However, Doctor Banks did not examine Plaintiff until October 7, 2004, three (3) weeks after the prisoner sustained the injury to his right eye.[5]

The Complaint recognizes that Doctor Banks performed surgery at Williamsport Hospital on October 14, 2004.  However, because this surgery was allegedly delayed due to BOP budgetary concerns, Lopez concludes that he may have suffered continued pain and loss of vision and may require additional surgeries with limited chance of success.

Following surgery, Plaintiff states that he was prescribed Tylenol # 3 (with Codeine) and Motrin for pain.  After returning to FCI-Allenwood, Lopez claims that he was kept on Tylenol despite suffering side effects from that medication.  His side effects, including rapid heart beat, were "never addressed" by Defendants.  *Id*. at ¶ 31.

On October 25, 2004, Lopez indicates that he had a post-surgical examination with Doctor Banks.  Banks allegedly informed Plaintiff that "everything was healing normally" and another follow up appointment would be scheduled within eight (8) weeks from the date of surgery.  *Id*. at ¶ 32.  This recommendation was conveyed to Defendant PA Roces.  Approximately one (1) hour later, Doctor Okundaye allegedly pressured Banks into agreeing that another

---

[5]    A recitation of the claims solely asserted against former Defendant Doctor Banks is unnecessary.

follow up appointment was not necessary.  Okundaye's action was purportedly

motivated by budgetary concerns.

It is further alleged that no follow up visits were scheduled with FCI-

Allenwood medical staff during the ensuing two (2) months.   Moreover, with the

exception of a May 19, 2005 audiological examination which resulted in no

further treatment, Plaintiff claims that he has not been provided with any further

post-operative care by the FCI-Allenwood medical staff.

On August 24, 2005, Plaintiff was transferred to LSCI-Allenwood.

Following his arrival, Lopez claims that he was not provided with a complete

medical examination as mandated by BOP policy.  *See id.* at ¶ 41.  On September

22, 2005, Plaintiff states that he was seen by Defendant PA Weber for pain in his

right eye.  Weber merely prescribed Motrin and no follow up visits were

scheduled.  Plaintiff was examined by Defendant Thomas on December 2, 2005

for "continued pain by the right eye."  *Id.* at ¶ 43.  Thomas likewise prescribed

Motrin despite Plaintiff's complaints that said medication was ineffective.  Lopez

adds that Thomas also recommended that the prisoner be seen by  LSCI-

Allenwood Clinical Director, Doctor Brady.

On December 6, 2005, Doctor Brady issued Plaintiff a prescription for

Amtriptyline, which is described in the Complaint as being an anti-depressant.

This action was allegedly taken by Doctor Brady without benefit of any

examination of Lopez.  By December 12, 2005, Plaintiff indicates that he began suffering side effects from taking Amtriptyline.  On said date, Lopez purportedly sent a written complaint to Dr. Brady which went unanswered.  Plaintiff claims that he refused to continue taking Amtriptyline on December 20, 2005 and no substitute medication was provided.

The Complaint next asserts that Defendant Weber treated Plaintiff for severe pain on February 15, 2006.  PA Weber prescribed Naproxen-Sodium, a pain medication.  However, Weber purportedly erred by not warning Plaintiff that he should not take Motrin with his new medication.  An unidentified contract optometrist examined Lopez on February 28, 2006 and "prescription glasses were ordered."  *Id*. at ¶ 49.  His Complaint notes that his vison was steadily deteriorating since his mishap.  On March 27, 2006, Lopez was given an antibiotic and Motrin for an ear infection.

Despite his continued protests that Motrin was not relieving his pain, Plaintiff was again prescribed Motrin by Defendant Factora on April 8, 2006 and by Weber on August 14, 2006 and September 19, 2006.  In addition, Defendant George saw Plaintiff on September 10, 2006 and refused to take any action with respect to Plaintiff's claim that Motrin was not providing him with any relief.

The Complaint next asserts that x-rays taken on September 19, 2006 confirmed that Plaintiff had suffered "permanent injuries," however, no further

treatment was recommended.  *Id*. at ¶ 58.  On November 15, 2006, it is alleged

that PA Weber refused to treat Lopez.  Defendant Woodhead, a Health

Information Technician, was also present and ordered Plaintiff to leave the

Medical Department after the inmate demanded to be provided with proper

medical care.  Lieutenant Scampone was called and had Lopez taken to the

prison's Special Housing Unit ("SHU").  *See id*. at ¶ 60.  A misconduct charge

was filed against Plaintiff as a consequence of the incident.  Discipline Hearing

Officer (DHO) Cerney conducted a hearing on the charge on December 5, 2006.

Cerney found Plaintiff guilty of the charge and allegedly denied him due process

by refusing to consider the inmate's argument that he had been in continuous pain

since his accident.

On December 13, 2006, Defendant Weber again prescribed Motrin for

treatment of Plaintiff's pain along with Trazadone, an anti-depressant.  Thereafter,

on January 26, 2007, Defendant Craig failed to prescribe any pain medication.  In

conclusion, Lopez contends that he has been denied adequate treatment, especially

post-operative pain medication,  for the injuries and pain resulting from his

accident.  He asserts that Defendants have both committed medical malpractice

and displayed deliberate indifference to his serious medical needs.

**Discussion**

Remaining Defendants seek entry of dismissal or summary judgment on the

grounds that: (1) Remaining Defendants are entitled to sovereign immunity with respect to the *Bivens* claims asserted against them in their official capacities; (2) the *Bivens* allegations are barred by the statute of limitations; (3) Defendants Woodhead and Cerney were not personally involved in the alleged constitutional misconduct; (4) Plaintiff failed to exhaust his administrative remedies with respect to his *Bivens* claims;  (5) Lopez fails to set forth a viable claim of deliberate indifference; (6) a viable FTCA claim of medical malpractice has not been asserted;  (7) Plaintiff's claim of negligence for failing to install padding on the basketball pole is barred by the discretionary function exception; and (8) Remaining Defendants are entitled to qualified immunity.

Prior to the filing of Remaining Defendants' supporting brief.  Plaintiff filed two responses, both of which generally requested that the motion to dismiss and for summary judgment be denied because he has been denied adequate care for chronic pain.  *See* Record documents 35 & 36.

After submission of Remaining Defendants' supporting brief, Plaintiff requested and was granted two separate enlargements of time in which to file an opposing brief.  However, Lopez has failed to submit an opposing brief which addresses Remaining Defendants' pending arguments.

**Standard of Review**

Remaining Defendants' motion is accompanied by evidentiary materials

[documents] outside the pleadings which are relevant for purposes of both

determining the issues of non-exhaustion as well as their alternative arguments.

Rule 12(b) provides in part as follows:

> If, on a motion asserting the defense numbered (6) to
> dismiss for failure of the pleading to state a claim upon
> which relief can be granted, matters outside the pleading
> are presented to and not excluded by the court, the
> motion shall be treated as one for summary judgment
> and disposed of as provided in Rule 56, and all parties
> shall be given reasonable opportunity to present all
> material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).  The Court will not exclude the evidentiary materials

accompanying Remaining Defendants' motion.  Thus, their motion will be treated

as solely seeking summary judgment.

Summary judgment is proper if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *See also*, *Saldana v. Kmart Corp.,* 260 F.3d 228, 231-32 (3d

Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit

under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary

basis that would allow a reasonable fact-finder to return a verdict for the non-

moving party. *Id.* at 248.  The court must resolve all doubts as to the existence of

a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260

F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609

(M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to

support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett*,

477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its]

own affidavits, or by the depositions, answers to interrogatories, and admissions

on file, designate specific facts showing that there is a genuine issue for trial."  *Id.*

(internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations

omitted).  Summary judgment should be granted where a party "fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden at trial."  *Celotex*, 477 U.S. at

322-23.  "'Such affirmative evidence – regardless of whether it is direct or

circumstantial – must amount to more than a scintilla, but may amount to less (in

the evaluation of the court) than a preponderance.'"  *Saldana*, 260 F.3d at 232

(*quoting Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir.

1989)).

## Sovereign Immunity

Remaining Defendants' first argument contends that the *Bivens* claims

against them in their official capacities should be dismissed for lack of subject

matter jurisdiction.  They argue that those claims are barred by the doctrine of sovereign immunity.  *See* Record document no. 40, p. 21.

The United States is generally immune from suit absent an explicit waiver of sovereign immunity,   *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  This "immunity is jurisdictional in nature,"  *FDIC v. Meyer*, 510 U.S. 471, 475  (1994), and extends to government agencies and employees sued in their official capacities.  *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996); *Chinchello v. Fenton*, 805 F. 2d 126, 130, n. 4 (3d Cir. 1986).

"Congress has not waived sovereign immunity for damages claims for constitutional violations."  *Germosen v. Reno*, Civil No. 99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.).  Therefore, entry of summary judgment in favor of the Remaining Defendants is appropriate to the extent that the present Complaint asserts *Bivens* claims against them in their official capacities.

**Statue of Limitations**

The second argument raised by Remaining Defendants contends that Pennsylvania's applicable statute of limitations precludes consideration of Lopez's *Bivens* claims.  *See* Record document no. 40, p. 22.  They state that the statute of limitations began to run as of September 18, 2004, the date of Lopez's accident and as a result his present *Bivens* claims needed to be filed by September 18, 2006.

When previously faced with this argument, Plaintiff contended  that

dismissal on the basis of untimeliness is not appropriate because he "is still undergoing treatment and continues to suffer from negligent treatment." Record document no. 27, p. 2. This argument was previously construed as contending that his *Bivens* claims fall within the continuing pattern exception.

As previously noted by this Court's June 3, 2008 Memorandum and Order, a federal court in applying the statute of limitations to a *Bivens*-type civil rights action, must employ the appropriate state statute of limitations which governs personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Urrutia v. Harrisburg County Police Dep't*, 91 F.3d 451, 457 n. 9, 25 (3d Cir. 1996). *Wilson* clarified that courts considering federal civil rights claims "should borrow the general or residual [state] statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250 (1989); *Little v. Lycoming County*, 912 F.Supp. 809, 814 (M.D. Pa. 1996). Pennsylvania's applicable personal injury statute of limitations is two (2) years. *See* 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993); *Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir. 1985).

However, the date when a cause of action accrues is still a question of federal law. *Smith v. Wambaugh*, 887 F. Supp. 752, 755 (M.D. Pa. 1995). The statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action."

*Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted); s*ee also McGowan v. University of Scranton*, 759 F.2d 287 (3d Cir. 1985). The limitations period begins to run if a plaintiff has sufficient notice to place him on alert of the need to begin investigating. *Gordon v. Lowell*, 95 F. Supp.2d 264, 272 (E.D. Pa. 2000). Under *Gordon,* a "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." *Id*.

Thus, Lopez's *Bivens* claims against Remaining Defendants accrued when the facts which support those claims reasonably should have become known. However, if a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing pattern falls within the limitations period. *Brenner v. Local 514*, 927 F. 2d 1283, 1295 (3d Cir. 1991).

In addition to the continuing pattern exception, the Court of Appeals for the Third Circuit recognized two additional doctrines, equitable tolling and the discovery rule, which may extend the statute of limitations. *Oshiver v. Levin, Fishbein, Sedran, & Berman*, 38 F.3d 1380 (3d Cir. 1993). The statute of limitations may be subject to equitable tolling where it is shown that the plaintiff exercised reasonable diligence in bringing his claims. *Campbell v. Kelly*, 87 Fed. Appx. 234, 236 (3d Cir. 2003). The discovery rule is a judicially created principle which tolls the statue of limitations in cases where a reasonable person in the plaintiff's shoes lacks the critical facts to put him on notice that he needs to

investigate.

Lopez's complaint is dated June 19, 2007.  Under the standards announced in *Houston v. Lack*, 487 U.S. 266 (1988), his Complaint will be deemed filed as of that date.  Plaintiff alleges that he was injured while playing basketball on September 18, 2004.  His initial claim is that the failure to place padding on the basketball pole both caused his injury and was the result of deliberate indifference. Lopez also contends that Correctional Officers Free and Kevin violated his constitutional rights by not providing him with immediate medical treatment.  As of September 18, 2004, Plaintiff had all the facts necessary for him to pursue or to begin to investigate those *Bivens* claims, thus the discovery rule is inapplicable.

Likewise, there is no apparent basis for equitable tolling with respect to those allegations.  There is also no support in the record for a determination that the failure to pad the pole or that the conduct of Free and Kevin were part of a continuing pattern.  Consequently, summary judgment will be granted in favor of the Remaining Defendants with respect to those allegations on the grounds that they are time barred.

The next portion of the Complaint asserts that there were various instances of deliberate indifference to Plaintiff's medical needs during his confinement at FCI-Allenwood.  This Court agrees that all of those contentions may be viewed as part of a continuing pattern by FCI-Allenwood medical staff.  However, the Court

fails to see how the alleged conduct attributed to the FCI-Allenwood Medical Defendants can be deemed part of a continuing pattern involving officials at his subsequent place of confinement, namely, the LSCI-Allenwood Defendants.

It is undisputed that Lopez was transferred from FCI-Allenwood on April 24, 2005.  At the time of his transfer Plaintiff clearly had all the facts necessary to put him on notice of the need to investigate his allegations of deliberate indifference against the FCI-Allenwood medical staff.

Based upon an application of the standards announced in *Gordon* and *Campbell*, the allegations against the FCI-Allenwood Medical Defendants will be construed as being part of a continuing pattern extending from September 18, 2004 to April 24, 2005.  Despite that determination, the present Complaint is still untimely with respect to those Defendants because it was not filed until June 19, 2007 more than two (2) years after the date Lopez was transferred from FCI-Allenwood.  It is noted that Plaintiff has not established any basis for equitable tolling or applicability of the discovery rule with respect to his FCI-Allenwood related allegations.  Summary judgment will be entered in favor of the FC I-Allenwood Defendants  (specifically Free, Kevin, Okundyke, Freynik, Manenkoff, and Roces) with respect to the *Bivens* portion of the Complaint.[6]

---

[6]   It is additionally noted that those FCI-Allenwood officials are not properly named Defendants with respect to Plaintiff's FTCA claims because the United States of America is the only proper Defendant in an FTCA action.  *See* 28 U.S.C. § 2679(d).

The *Bivens* claims asserted against the LSCI-Allenwood Defendants are two fold.  First, Lopez contends that there was deliberate indifference to his medical needs stretching from the date he entered the facility, August 24, 2005 to December 13, 2006.  Plaintiff also alleges that two FCI-Allenwood officials, Cerney and Woodhead, violated his constitutional rights with respect to the filing and unfavorable disposition of a misconduct charge.

As noted earlier, Lopez's Complaint is deemed filed as of June 19, 2007.  Consequently, all of the alleged acts of deliberate indifference  asserted against the LSCI-Allenwood Medical Defendants occurred within two (2) years of the filing date of his action.  Hence the request that those allegations be deemed time barred will be denied.  Issuance of the underlying misconduct charge and the resulting disciplinary hearing took place during November-December, 2006 and as such were also timely presented to this Court.

**Misconduct Charge**

Remaining Defendants next contend that Defendants Cerney and Woodhead had no personal involvement in Plaintiff's medical care and that any claims relating to the misconduct charge and resulting disciplinary hearing must be pursued in a federal habeas corpus petition.

This Court agrees that are no allegations asserted against Cerney and Woodhead with respect to Plaintiff's medical treatment.  Rather, Lopez claims that

Woodhead was involved in the issuance of a baseless misconduct charge against him which stemmed from a November 15, 2006 incident in the LSCI-Allenwood Medical Department. DHO Cerney presided over the resulting disciplinary hearing and allegedly acted improperly by ignoring Plaintiff's contention that his conduct was caused by the failure to receive adequate treatment for his constant pain and by finding Lopez guilty of the charge.

A federal prisoner has a constitutionally protected liberty interest in good time credit. *See Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). Inmates however, may not use federal civil rights actions to challenge the fact or duration of their confinement or to seek earlier or speedier release. *Preiser v. Rodriguez,* 411 U.S. 475 (1975). Rather, federal habeas corpus review is available "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002).

Plaintiff acknowledges that among the sanctions imposed by DHO Cerney was a thirteen (13) day loss of good time credits. *See* Record document no. 1, ¶ 61. Since the length of Lopez's confinement was impacted by the loss of good time credits, any constitutional challenge to the underlying misconduct charge and/or disciplinary hearing must be asserted in a federal habeas corpus petition. Based upon an application of the *Preiser* and *Leamer* standards, entry of summary judgment without prejudice in favor of Defendants Woodhead and Cerney is

appropriate with respect to the *Bivens* allegations asserted against those officials.

Plaintiff if he so chooses, may reassert his present claims against those two

Defendants via a properly filed habeas corpus petition under 28 U.S.C. § 2241.

**Administrative Exhaustion**

Based upon the above discussion, the only remaining *Bivens* claims are that

the LSCI-Allenwood Medical Defendants were deliberately indifferent to Lopez's

serious medical needs.  Remaining Defendants next argue that "Lopez failed to

exhaust the required BOP administrative remedy process" concerning those claims.

Record document no. 40, p. 12.   Accordingly, they seek entry of summary

judgment with respect to the remaining *Bivens* portion of the Complaint on the

basis of non-exhaustion.

42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison
> conditions under Section 1979 of the Revised Statutes of
> the United States (42 U.S.C. 1983), or any other federal
> law, by a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies as
> are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of

relief sought and offered through administrative avenues."  *Porter v. Nussle*, 534

U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001).  Claims for

monetary relief are not excused from the exhaustion requirement.  *Nyhuis v. Reno*,

204 F.3d 65, 74 (3d Cir. 2000).  Dismissal of an inmate's claim is appropriate

when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. *Ahmed v. Sromovski*, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." *Tribe v. Harvey*, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)).

The Court of Appeals for the Third Circuit in *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003), stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead." *See also Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000); *Jenkins v. Haubert*, 179 F.3d 19, 29 (2d Cir. 1999). Consequently, a prisoner does not have to allege in his complaint that he has exhausted administrative remedies. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Rather, it is the burden of a defendant asserting the defense to plead and prove it. *Id.*; *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997); *Charpentier v. Godsil*, 937 F.2d 859 (3d Cir. 1991); Fed. R. Civ. P. 8(c)).

The BOP has established a multi-tier Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment.[7]

---

7.   Matters excluded from this program are set forth at 28 C.F.R. § 542.12, which states as follows:

> (a) An inmate may not use this Program to submit a Request or Appeal on behalf of another inmate. This program is intended to address concerns that are personal to the inmate making the Request or Appeal, but shall not prevent an

(continued...)

*See* 28 C.F.R. §§ 542.10-542.19 (1998).  "This program applies to all inmates confined in institutions operated by the Bureau of Prisons, to inmates designated to Community Corrections Centers (CCCs) under Bureau of Prisons' responsibility, and to former inmates for issues that arose during their confinement but does not apply to inmates confined in other non-federal facilities."  *Id*. at § 542.10.

The program provides that, with certain exceptions,  "... an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request For Administrative Remedy."[8]  *Id*. at § 542.13(a).  Next, if informal resolution fails, the inmate must submit "a formal written Administrative Remedy Request, on the appropriate form

---

(...continued)
        inmate from obtaining assistance in preparing a Request or Appeal, as provided in § 542.16 of this part.
        (b) Requests or Appeals will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established, including tort claims, Inmate Accident Compensation claims, and Freedom of Information or Privacy Act requests.  Staff shall inform the inmate in writing of the appropriate procedure if the Request or Appeal is not acceptable under the Administrative Remedy Program.

    8.   CCC inmates are not required to seek informal resolution.  *Id*. at § 542.13(b).  Informal resolution is not required for those matters identified in § 542.14(d), which include sensitive issues and DHO, Control Unit, and Controlled housing status appeals.  *Id*.  Additionally, informal resolution may be waived in individual cases at the discretion of either the Warden or the institution Administrative Remedy Coordinator "when the inmate demonstrates an acceptable reason for bypassing informal resolution."  *Id*.

(BP-9)," within 20 "calendar days following the date on which the basis for the Request occurred." *Id*. at § 542.14(a).  If a valid reason for delay is given, an extension of the filing time may be granted.  *Id*. at 542.14(b).  The Warden has 20 calendar days from the date the Request or Appeal is filed in which to respond.  *Id*. at § 542.18.

If not satisfied with the Warden's response, an inmate may appeal on the appropriate form (BP-10) to the Regional Director within 20 calendar days of the date the Warden signed the response.  *Id*. at § 542.15.  Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed on the appropriate form (BP-11) to the General Counsel within 30 calendar days from the date the Regional Director signed the response.  *Id*.  "When the inmate demonstrates a valid reason for delay, these time limits may be extended."  *Id*.  The Regional Director has 30 calendar days to respond and the General Counsel has 40 calendar days in which to respond.  *Id*. at § 542.18.

The response time provided for at each level may be extended in writing "once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level."  *Id*.  Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  *Id*.

Remaining Defendants acknowledge that Plaintiff filed seven (7)

administrative grievances.  They also admit that two (2) of those grievances regard issues which are raised in the present Complaint.  However, those two grievances regarded his institutional disciplinary hearing claims.  Since this Court has already concluded that Lopez's allegations relating to his misconduct hearing must be asserted in a federal habeas corpus petition, those grievances are not relevant to the issue of whether he exhausted his claims against the LSCI-Allenwood Medical Defendants.

It is also noted that because the exhaustion procedures for the FTCA differ from those of BOP *Bivens* claims, "the fulfillment of one does not constitute satisfaction of the other."  *Owusu v. Bureau of Prisons*, 2003 WL 68031 * 2 (S.D.N.Y. Jan. 7, 2003).  Hence, regardless of whether Lopez exhausted any FTCA claim, he was not excused from completion of the BOP's administrative remedy procedure with respect to his *Bivens* claims of deliberate indifference against the LSCI-Allenwood Medical Defendants.

In support of their non-exhaustion argument, Remaining Defendants have submitted a declaration under penalty of perjury by LSCI-Allenwood Paralegal Susan Albert.  *See* Record document no. 40, Exhibit 3.  Albert states that she has reviewed both Plaintiff's present Complaint and the BOP's computerized files relating to Lopez's submission of administrative requests and appeals.  Based upon her review, Albert states "Lopez has failed to exhaust the administrative remedy

process for the issues he raises in his complaint." *Id*. at ¶ 13.

Attached to Albert's declaration is a computerized printout which indicates that Plaintiff filed seven (7) administrative grievances.  Two grievances concerned his disciplinary proceedings.  Two other grievances  regarding  delay in medical care and unprofessional conduct were submitted on November 30, 2007 and December 10, 2007.  However, both of those grievances were filed after the initiation of this action.

Three grievances, filed on March 29, 2007, May 2, 2007, and June 19, 2007 concern unprofessional conduct of staff.   With exception of Albert's general contention that they do not relate to Plaintiff's pending claims, no other information is provided regarding these administrative grievances.

Plaintiff's initial preliminary response to Remaining Defendants' pending dispositive motion includes purported copies of administrative grievances complaining about his medical care at LSCI-Allenwood which are dated September 12, 2007, October 9, 2007, October 19, 2007, October 24, 2007 and December 27, 2007.  *See* Record document no. 35, Attachment A.  Attached to Lopez's second preliminary response are copies of three (3) administrative grievances dated October 24, 2007, September 12, 2007, and October 5, 2007.  *See* Record document no. 36.

Based upon consideration of those submissions and since the actual content

of the three unprofessional conduct grievances referenced by Albert is unclear, this Court is not satisfied that Defendants have met their burden under *Williams* of establishing that Plaintiff's *Bivens* claims against the LSCI-Allenwood Medical Defendants are unexhausted.  The request for summary judgment on the basis of non-exhaustion will be denied.

**Deliberate Indifference**

Remaining Defendants next contend that "there are no facts to support the conclusion that Defendants were deliberately indifferent to Lopez's medical needs."  Record document no. 40, p. 20.  They add that Plaintiff was provided with medical care on the day of his accident and "numerous times thereafter."  *Id.*

The United States Supreme Court has established that correctional officials have an "obligation to provide medical care for those whom it is punishing by incarceration."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  However, a constitutional violation does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain."  *Id.* at 104 (citation omitted).  In *Farmer v. Brennan*, 511 U.S. 825, 841 (1994), the Supreme Court added that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."

Negligent diagnosis or treatment of a medical condition does not state a

valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.  Therefore, when a prisoner has actually been provided with medical treatment, if such treatment is inadequate because it results from an error in medical judgment, there is no constitutional violation.  *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).  However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  *See id.*   It is especially noted that deliberate indifference requires more than a medical error.  Rather, it must be shown that a prison official failed to take appropriate action despite his/her knowledge that such conduct would create a substantial risk of serious harm.

As previously noted, the only surviving *Bivens* claims are the assertions that the LSCI-Allenwood Medical Defendants failed to provide Lopez with proper post operative care; it is especially alleged that they failed to adequately address his complaints of chronic pain.

It is undisputed that Plaintiff suffered multiple facial fractures which required evaluation by an ENT, a CAT scan,  and eventual surgery.  *See* Record document no. 40, p. 20.  The parties also acknowledge that Lopez was seen by an optometrist and fitted with eyeglasses and seen by the LSCI-Allenwood medical staff on numerous occasions.  It is initially noted that Remaining Defendants do not

dispute Plaintiff's claim that he suffers from a serious medical need as required under *Estelle*. Since it is undisputed that Lopez suffered multiple facial fractures which required surgery and which caused him to suffer vison problems, headaches and chronic sinusitis while confined at LSCI-Allenwood, this Court is satisfied that Plaintiff's problems constitute a serious medical need as required under *Estelle*.

A declaration submitted under penalty of perjury by Doctor James Brady, Clinical Director at LSCI-Allenwood, states that a review of Lopez's medical records shows that upon his arrival at LSCI-Allenwood on August 24, 2005, "a medical history report was completed." Record document no. 40-2, Exhibit 2, ¶ 12. On December 2, 2005, Plaintiff was given Motrin after complaining of severe headaches. Doctor Brady indicates that he evaluated Plaintiff on December 6, 2005, prescribed Elavil for pain management and referred him to an eye specialist. According to Brady's declaration, Plaintiff returned to the Medical Department for a follow-up appointment on January 6, 2006. Lopez stated that he was continuing to experience pain on the right side of his face, had occasional blurred vision, and had stopped taking Elavil because it made him feel sweaty. However, there is no indication from Doctor Brady what action, if any, was taken in response to those complaints.

Doctor Brady next avers that Lopez returned to the Medical Department over a month later (on February 15, 2006) with the same complaints. At this point,

Naproxen was prescribed and x-rays as well as lab tests were ordered. *See id.* at ¶

16. Thereafter, Plaintiff was seen by an optometrist on February 28, 2006 and was

subsequently provided with eyeglasses. During three (3) visits to the Medical

Department (March 27, 2006, April 8, 2006, and April 13, 2006) Plaintiff

complained of left ear pain and was treated for cerumen (impaction of ear wax).

Plaintiff underwent a radiograph of his sinuses and facial bones on September 20,

2006. On December 15, 2006, Plaintiff was prescribed Trazadone for chronic pain.

By way of summary, Doctor Brady confirms that since his arrival at LSCI-

Allenwood, Plaintiff has sought treatment for headaches on numerous occasions.

Lopez has also indicated that Motrin was not a viable option for pain relief.

Moreover, Brady acknowledges that Plaintiff "may continue to suffer from

headaches" and has been diagnosed as having chronic right maxillary sinusitis. *Id.*

at ¶ 29. However, while at LSCI-Allenwood Lopez has been: treated for cerumen,

examined by an optometrist and prescribed eyeglasses, underwent a radiograph,

prescribed x-rays and lab tests, and has been given Motrin, Tylenol, Trazadone,

and Elavil for pain. Doctor Brady concludes by opining that "there is no evidence

that his pain cannot be managed by pain medication." *Id.*

It is undisputed that Plaintiff suffers from chronic headaches and sinusitis.

Lopez asserts that the LSCI-Allenwood Medical Defendants have not undertaken

an effective treatment for his chronic pain and suggests that he should be seen by a

specialist and that a surgical alternative may exist.  Doctor Brady indicates that

Plaintiff's pain has been addressed by prison staff and can be managed by pain

medication.

Under *Durmer*, a failure to provide medical care where the need for such

care is known is not a constitutional violation if it is merely negligent. In order to

amount to deliberate indifference, the failure must be intentional or motivated by

non-medical factors.  During his confinement at LSCI-Allenwood, Plaintiff has

clearly been provided with regular treatment for his headaches/pain.  This

treatment has consisted of more than just being prescribed Motrin.  There are

clearly issues as to whether the pain treatment via medication has been sufficient.

It is equally unclear as to whether there are any  medical alternatives available for

treatment of Lopez's chronic condition.

However, this is not a case where there has been a failure or a delay in

providing medical care.  Likewise, there is no basis upon which to conclude that

any recommended treatment was not provided due to financial concerns or any

other non-medical factors.  Based upon an application of *Estelle* and *Durmer* to the

undisputed facts, the claims against the LSCI-Allenwood Medical Defendants are

properly characterized as alleging negligent medical care as opposed to deliberate

indifference.  Summary judgment will be granted in favor of the remaining LSCI-

Allenwood Defendants.

**Medical Malpractice**

Since summary judgment has been granted in favor of Remaining Defendants with respect to the *Bivens* portion of the Complaint, the only surviving properly named Defendant with respect to Lopez's FTCA claims is the United States of America.

Remaining Defendant argues that Plaintiff's FTCA claim of medical malpractice must be dismissed because of his failure to file a certificate of merit as required under Pennsylvania state law.

A federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred.  28 U.S.C. § 1346(b) (1996); *Toole v. United States*, 588 F.2d 403, 406 (3d Cir. 1978); *O'Neal v. Department of Army*, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987).  In cases involving federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence.  *See* 18 U.S.C. § 4042; *Turner*, 679 F. Supp. at 443.  The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred.  *Hossic v. United States*, 682 F. Supp. 23, 25 (M.D. Pa. 1987).

Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the

evidence. *Baum v. United States*, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982).[9]  In

order to present a *prima facie* case of medical malpractice/negligence under

Pennsylvania state law, a plaintiff has the burden of presenting expert testimony by

an appropriate licensed professional who can testify to a reasonable degree of

medical certainty that the actions or omissions of the defendant deviated from

acceptable medical standards, and that said deviation constituted a substantial

factor in causing the Plaintiff's injury. *Simpson v. Bureau of Prisons*, 2005 WL

 2387631 *5 (M.D. Pa. Sept. 28, 2005)(Vanaskie, C.J.).[10]

    Pennsylvania Rule of Civil Procedure 1042.3 requires a person who brings a

claim of medical malpractice/negligence to file an appropriate certificate of merit

either with the complaint or within sixty (60) days thereafter.   The Rule 1042.3

certificate must certify that either: (1) an appropriate licensed professional has

supplied a written statement that there exists a reasonable probability that the

conduct which is the subject of the complaint fell outside acceptable professional

---

[9]  Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978).

[10]  The only exception to this rule is where the matter "is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons." *Berman v. United States*, 205 F. Supp.2d 362, 264 (M.D. Pa. 2002) (citing *Brannan v. Lankenau Hospital*, 490 Pa. 588 (1980).  As noted in *Simpson,* the instances when expert opinions may be unnecessary are rare.

standards and was a cause in bringing about the harm; (2) the claim of deviation by

defendant from an acceptable professional standard is based solely upon

allegations that other licensed professionals for whom defendant is responsible

deviated from an acceptable professional standard; (3) expert testimony of an

appropriate licensed professional is unnecessary.

　　　　Courts within this circuit have recognized that Rule 1042.3 is substantive

law and should be applied by federal courts sitting in diversity.  *Schwalm v.*

*Allstate Boliler & Construction*, 2005 WL 1322740 *1 (M.D. Pa. May 17,

2005)(Caputo, J.); *Scaramuzza v. Sciolla*, 345 F. Supp.2d 508, 509-10 (E.D. Pa.

2004).  It has also been held that a Plaintiff pursuing an FTCA claim must comply

with Pennsylvania substantive law.  *Arrington v. Inch*, 2006 WL 860961 *7 (M.D.

Pa. March 30, 2006) (Conner, J.).

　　　　Plaintiff alleges that he was not provided with timely and proper medical

care during the period following his September 18, 2004 accident.  He further

contends that he did not receive proper post-operative care after his October 14,

2004 surgery.  He especially alleges that the delay in undergoing surgery and the

failure to effectively treat his chronic pain constituted negligence.  Based upon the

nature of those claims, Lopez must come forward with expert testimony to state a

*prima facie* case of negligence/medical malpractice  under the FTCA.

　　　　Plaintiff has not submitted a Rule 1042.3 certificate of merit, identified any

medical expert or submitted a report from any medical expert.  There has also been no submission of any notice indicating that the expert testimony is unnecessary.  It is also noted that Plaintiff's incarceration or *pro se* status is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of coming forth with expert medical testimony.  *See Perez v. Griffin*, 2008 WL 2383072 *3 (M.D. Pa. June 9, 2008)(Rule 1042.3 applies to incarcerated and *pro se* plaintiffs and constitutes a rule of substantive state law to which plaintiffs in federal court must comply).  In light of his failure to submit a response to Remaining Defendants' Rule 1042.3  argument, Lopez has not presented any valid reason as to why his failure to file a certificate of merit or otherwise indicate that he has an expert witness should be excused.

Since Plaintiff has not submitted a Rule 1042.3 certificate of merit or otherwise indicated that he has retained an expert witness, it is appropriate for a federal district court to dismiss his FTCA medical malpractice claims without prejudice.  *See Osorio v. United States*, 2007 WL 2008498 *2 (W.D. Pa. July 5, 2007); *see also Henderson v. Pollack*, 2008 WL 282372 *4 (M.D. Pa. Jan 31, 2008)(Caldwell, J.)(citing *Hartman v. Low Security Correctional Institution, Allenwood*, 2005 WL 1259950 * 3 (M.D. Pa. May 27, 2005)(Muir, J.).

**Discretionary Function Exception**

Remaining Defendants next contend that Plaintiff's surviving FTCA claim

that the BOP was negligent for not installing padding on the FCI-Allenwood

basketball pole is barred by the FTCA's discretionary function exception.

Under the FTCA, sovereign immunity is waived against persons suing the

federal government for the commission of various torts. *Simon v. United States*,

341 F. 3d 193, 200 (3d Cir. 2003). In presenting an FTCA claim, a plaintiff must

show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of

said duty; and (3) the negligent breach was the proximate cause of the plaintiff's

injury/loss.

The United States is only liable under the FTCA for conduct by government

employees while acting within their scope of employment. *Matsko v. United*

*States*, 372 F.3d 556, 559 (3d Cir. 2004). 18 U.S.C. § 4042 imposes a general

duty of care on the BOP to safeguard its prisoners. However, the regulation does

not dictate the manner by which that duty is to be fulfilled. *See Cohen v. United*

*States*, 151 F.3d 1338,1343 (11th Cir. 1998). Hence, the BOP has the ability to

exercise its judgment on how its duty under § 4042 is to be fulfilled.

A significant limitation on FTCA claims is imposed by 28 U.S.C. § 2680(a),

which provides that liability may not be premised on a claim against a government

employee which is "based upon the exercise or performance or the failure to

exercise or perform a discretionary function or duty."

"Conduct is not discretionary unless it involves an element of judgment or

choice.'  *Koch v. United States*,  814 F. Supp. 1221, 1227 (M.D. Pa. 1993).

In *Berkovitz v. United States*, 486 U.S. 531 (1988), the United States Supreme

Court adopted a two part inquiry with respect to § 2680(a).  First, a court must

decide if "a federal statute, regulation or policy specifically prescribes a course of

action for an employee to follow."  *Id.* at 536.  If so, "the employee has no rightful

option but to adhere to the directive."  *Id.*  Federal employees such as correctional

officers employed by the Bureau of Prisons simply "do not have discretion to

violate mandatory requirements" or constitutional rights.  *Koch*, 814 F. Supp. at

1228.

There is no indication that the BOP imposed a mandatory duty upon its

employees to pad basketball poles.  There is also no constitutional mandate that

requires basketball poles to be padded.  Moreover, the fact that a similar basketball

pole may have been  padded at LSCI-Allenwood does not require a finding that

FCI-Allenwood officials had a mandatory duty to pad its basketball poles.[11]  Since

there was no mandatory duty under BOP regulations to pad the basketball pole, the

first prong of the two part inquiry has been satisfied.

The second part of the inquiry provides that if the decision was one "which

balances competing considerations or identifiable policy factors such as budgetary

considerations, safety concerns, allocation of limited resources, etc. may be

_____

[11]  It is also noted that LSCI-Allenwood houses prisoners who poses lesser
security risks than those housed at FCI-Allenwood.

discretionary." *Koch*, 814 F.Supp at 1227, citing *Johnson v. United States*, *Department of the Interior*, 949 F.2d 332, 340 (10th Cir. 1991).

In the present case, Remaining Defendants contend that the discretionary function exception is applicable because prison administrators decided not to pad the poles for valid safety and security reasons.  In support of that argument, they have submitted a declaration under penalty of perjury by FCI-Allenwood Recreation Supervisor Quinton Blanton.  Blanton acknowledges that the prison's outdoor basketball poles were not padded.  *See* Record document 40-2, Exhibit 1, ¶ 10.  He states that there was no BOP requirement or policy that the poles be padded.  Blanton adds that padding the poles "could possibly jeopardize the secure and orderly running of the institution and the safety of staff and inmates." *Id*.  He notes that weapons and contraband could be hidden within the padding and the pads themselves could "be used as weapons, as an aid to escape, or as body armor or a shield in the event of an institution disturbance." *Id*.

Blanton's declaration  has set forth legitimate penological objectives for the decision not to place padding on the pole which have not been contradicted by Plaintiff.  Accordingly, this Court concurs that the decision not to pad the basketball pole was a reasonable exercise of discretion and is protected under the discretionary function exception.  Summary judgment will be entered in favor of Remaining Defendant United States of America with regards to Lopez's surviving

FTCA claim.  An appropriate Order will enter.


   s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge


IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


RADHAMES LOPEZ,                                    :
          Plaintiff                      :
                                                   :
     v.                                         :   CIVIL NO.4:CV-07-1126
                                                   :
                                                   :   (Judge McClure)
DR. JAMES BRADY, ET AL.,                           :
         Defendants                      :

## **ORDER**

September 25, 2008

37

In accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1.  Remaining Defendants' dispositive motion is construed as solely seeking summary judgment.

2.  The summary judgment motion (Doc. 31) is granted.

3.  Summary judgment is granted in favor of the Remaining Defendants to the extent that the Complaint asserts *Bivens* claims against them in their official capacities.

4.  The *Bivens* claims against the FCI-Allenwood Defendants are barred by Pennsylvania's applicable statute of limitations.  Accordingly, summary judgment is entered in favor of Defendants Free, Kevin, Okundyke, Freynik, Manekoff and Roces.

5.  The claims against Defendants Woodhead and Cerney sound in habeas corpus and are improperly asserted in a civil rights action.  Summary judgment will be entered without prejudice in favor of those Defendants.

6.  The requests for entry of summary judgment on the basis of non-exhaustion of administrative remedies and preclusion under the statute of limitations with respect to

the *Bivens* claims against the LSCI-Allenwood

Defendants are denied.

7.     Summary judgment is granted in favor of the LSCI-

Allenwood Medical Defendants with respect to the

*Bivens* claims that they were  deliberately indifferent to

Plaintiff's medical needs.

8.     Lopez's FTCA claim of medical malpractice is dismissed

for his failure to file a certificate of merit.

9.     Plaintiff's remaining FTCA claim of negligence is barred

by the discretionary function exception.

10.    The Clerk of Court is directed to close the case.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge